We'll move on to the next case, CFPB v. RD Legal. Mr. Diehl? Yes, Your Honor. May it please the Court, Christopher Diehl for the Consumer Financial Protection Bureau. Just hold on one second. I just want to make sure Mr. Roth, I don't see him on my screen. Is Mr. Roth on the call? Oh, you're there. Okay. Mr. Diehl, you can go ahead. Thank you, Your Honor. So, Christopher Diehl for the Consumer Financial Protection Bureau. I'd like to discuss the Bureau's appeal in this case before turning to RD Legal's purported cross-appeal. In light of the Supreme Court's decision in SALA law, this Court should reverse the dismissal of the Bureau's complaint. The District Court dismissed because it concluded that the removal restriction in the Consumer Financial Protection Act was unconstitutional and couldn't be severed from the rest of the act. Well, the Supreme Court's cleared that up, so you've won it severable, and so the issue for us is where we go forward on that. Absolutely, Your Honor. And so because the Supreme Court reversed on or agreed with us on severability, the question is what happens now? And the answer that we put forward in our briefs, and which RD did not dispute, is that the case should be remanded to let the Bureau pursue this action under the leadership of a director who's removable by the President at will. As I said, we raised that at multiple points. Why was ratification timely? So there were – the Director Kraninger ratified this action after SALA law came down, and it was timely in terms of – if Your Honor's asking about the statute of limitations issues that were raised in RD's brief. So there are three reasons why the ratification is timely. First, the statute of limitations has already been satisfied. Under 12 U.S.C. 5564G, it says that no action can be brought more than three years after the date of discovery. Here, the Bureau, along with New York, brought an action within the required time period. And nothing in the Consumer Financial Protection Act says that the Bureau can only satisfy the statute of limitations when it's led by a director who's removed at will. And nothing in SALA law suggests that the Bureau's timely filing was somehow a nullity for statute of limitations purposes. Two other points on that, Your Honor. Just that the – it's important to focus on the fact that the – By the way, to what extent was this discussed by the district court or considered by the district court, the issue of ratification and timeliness? So the Bureau's ratification by Director Kraninger was not discussed at all by the district court because it occurred only after this case was in this court and only after the Supreme Court's decision in SALA law. But as I mentioned before, I don't think that the court even needs to – either this court or the district court even needs to get to the question of the validity of the ratification because RD has waived any contrary argument by failing to rebut our arguments in our opening brief that in the event that the provision was held unconstitutional and severable, that the right answer was to remand to allow the case to proceed. The district judge did talk about ratification, but only the ratification by the acting director. Is that correct? Yes, Your Honor. There had been an earlier ratification in this case under the leadership of acting director Mulvaney. So she had no chance to consider the ratification by the new – by the permanent director? Yes, that's – Yes, Your Honor. The ratification by Director Kraninger was not before – not originally before the district court. I'm happy to address the RD's purported cross-appeal if the court like. Just two very quick points on that. That's for all 12B6 resolutions, right? Yes, Your Honor. I think that was going to be my first point. The court doesn't need to address those issues here on this – on this appeal. Those are just issues that the court could consider in its discretion, but we think that the better course is not to. And I see that I'm out of time, but we'd ask that the court allow this case to be remanded so that the Bureau can continue to prosecute it. Thank you. Thank you. We'll hear from Ms. Olson. Good morning. May it please the court, Caroline Olson, on behalf of the state. I believe I've reserved two minutes for rebuttal. The district court's judgment dismissing the state's claims should be dismissed – reversed, and the case should be remanded to the district court to proceed on the state's claims. With respect to the state's appeal, RD Legal acknowledged in its July 2nd 28J letter to this court that in light of CELA law, there is no constitutional barrier to the state's federal claims going forward. Accordingly, I plan to focus on RD's cross-appeal. The state agrees with the CFPB that this court should not consider RD Legal's cross-appeal claims, and we'll rest on our briefs for that point unless the court has any specific questions. On the merits, the state's claims should go forward under both federal and state law because the state has adequately alleged that the cash advances that RD provided to members of the NFL and 9-11 settlement funds were loans and that RD made misleading and deceptive statements to induce consumers to execute them. Turning first to the status of the agreements, this court should reject RD's attempt to characterize the cash advances at issue here as sales and assignments rather than loans. As this court and New York courts have long recognized, a loan is essentially a contract in which one person transfers money to another person in exchange for a reasonably secure promise of repayment at a later date. It sounds like you're litigating the issue, but the only question is whether the complaint plausibly alleges that these were loans and deceptive and misleading, right? That's correct, Your Honor. As a matter of plausibility, the state has far exceeded its burden in pleading that these were loans and extensions of credit. The reason why is because at heart, as the complaint makes clear, the heart of these advances was that RD promised to give consumers cash now in exchange for a promise that they would repay RD a larger sum later. That is the basic structure of a loan, and the agreements here had four other features that indicate that these were really loans, four features that I'd like to highlight. The first being that RD assumed essentially minimal risk of nonpayment. In the words of the Rubenstein case, repayment was essentially secured and there was no genuine hazard. RD waited as a rule until after consumers in the 9-11 cases had in their hands a war letter saying, you will get a specific amount of money. RD was careful to only offer advances up to a small portion of those full awards, so even in the very unlikely chance that the fund was not able to cover the entire award, and there's nothing in the complaint that suggests otherwise, in fact, the complaint alleges it was very likely that these awards were going to be fully compensated, it was still the case that RD was extraordinarily likely to be paid, so there was no genuine hazard. Did you allege any claims below that have not now been resurrected by the Supreme Court? No, Your Honor. Our claims, once the constitutional issue was reversed, all of the state's claims, both as a matter of federal and state law, were revived. I'm sorry, go ahead. So you're back to square one in the district court? That's correct, except I would point out that the world is a little bit different now because we also have a state Supreme Court decision making essentially the same judgment that the district court did below on the question of the 9-11 fund, saying that in the state case, raising very similar claims the state had adequately pled, that these advances here were essentially loans and so should move forward to discovery for the purposes of allegations of misrepresentation, as well as allegations of state usury violations. Thank you. Mr. Roth? Let me please the court. My name is Michael Roth. I represent the appellees and the cross appellants in this case, RD Legal. The Supreme Court has now conclusively held that the structure of the Consumer Financial Protection Bureau violated the separation of powers, and that leaves two overarching issues that remain that should be decided in RD Legal's favor, because both of those issues are guided by controlling precedent. First, under binding Supreme Court precedent, and as the district court already found, the CFPB cannot ratify this enforcement action and it cannot ratify this appeal. Just a second. The district court only found that the acting director couldn't ratify. She didn't get to the new ratification, did she? The ratification at issue in the district court did deal with acting director Mulvaney, but the district court addressed a threshold issue, which is whether the ratification doctrine applies at all to the separation of powers issue that's at play here. And what the district court said is ratification is an issue of agency law. That's the same whether it's an acting director or a permanent director. And what ratification requires is a principal who has the authority to act at a given time and an agent reporting to act for that principal who doesn't have authority. What the district court said is that that's not the constitutional issue involved here, and the ratification doctrine doesn't apply at all. That's in the record at SA 103 through 105 is that analysis. And that analysis doesn't change whether it's a permanent director or an acting director. If the ratification doctrine doesn't apply, it doesn't apply. And that issue wasn't in the appeal. It's your position that there was no no one associated with the bureau who had the authority to ratify. Yes, your honor, it's that. That makes that you've got you've got to clarify that because that makes no sense to me. Sure, so as I was explaining, the ratification doctrine requires a principal who has authority to act at a given time and an agent that doesn't have authority who took certain actions. What this case involves is that the principal didn't have authority at the time the case was filed, not that there was an agent acting without. Back to the secondary statement that there had to be somebody who had authority at the time, the original time. That's not the law anymore. If it ever was the law, isn't it that at the time of ratification, the person has to have authority? It wouldn't make sense otherwise, really. Aren't you going back to the secondary statement? Your honor, it's the second restatement was quoted by the Supreme Court in FEC versus NRA Political Victory Fund, which relied on a case from the 1850s. What I'm going to is the Supreme Court's statement of the law that the Supreme Court relied on on the restatement to come up with its formulation of the meaning of the ratification doctrine doesn't take it out of the context that this is the Supreme Court stating what the law is. The Supreme Court's statement of when the ratification doctrine applies is the law. What the restatement does is sets forth sort of an ideal where the law should go. It's not a statement of what the law actually is. I'm surprised that the Supreme Court sent it back on re-ratification issue. It didn't say there's no ratification issue. It says district courts will decide or lower courts will decide the ratification issue. It said the Supreme Court sent it back for the lower courts to decide the legal and factual sufficiency of the ratification that was asserted there. And if you're right on your theory, that was just a that was a meaningless gesture. It's not a meaningless gesture in a state of law where ratification wasn't addressed at all. In our case, ratification was addressed. And this is it's also different because that case is dealing with. As Judge Rossani said, it was only addressed with respect to the act to the early director, not the new one. The application of the ratification doctrine at all was addressed by the district court. That doesn't matter. Why shouldn't we? Why shouldn't we let the district judge decide the issue? Well, the district court decided the threshold issue as to the second. Why shouldn't we let the district judge decide the second issue as you've just described it? The district judge has a new playing field now. The the there's severability. The district judge didn't have an opportunity to consider that. That that that is correct. But in FEC versus NRA political victory fund, the Supreme Court set out a two part test for ratification. And even under the restatement ideal where the first portion of it doesn't apply. The second portion of it, you have a fully developed record here. And what what the Supreme Court cited was comment a from the restatement. It wasn't the standard for whether the ratification doctrine applies at all. And what the Supreme Court said is they're putting the ratification. Is there two situations where ratification doesn't apply? It's when the case is time barred or when there's an appeal after the time for appeal has lapsed. And both of those situations apply here. This case was filed in February of 2017. There's no need to remand the case to to ask the court to decide that a ratification that happens in late 2020 happened more than three years after the statute of limitations. I mean, that that would be an exercise in futility for us for the for the government. For us, it's straightforward. And that's all in the record here. And FEC versus NRA Political Victory Fund dealt with the ability to ratify the filing of an appeal. And this case is very different. This is the only case where the district court found that the CFPB was unconstitutional. And so the CFPB is the appellants. They were required to file a timely appeal. And they they can't ratify that now, years after the time for appeal has passed. That was the exact issue in FEC versus NRA Political Victory Fund. The district court doesn't need to make a finding on that, that three years after the time for appeal has passed, they're trying to ratify it. But the merits of this case, whether the allegations are sufficient, that's something this court should address as well. Because those go to pure questions of law. This isn't about what was alleged in the complaint. There's a fundamental error in the district court's legal reasoning that the anti-assignment provision functions to transform a sale agreement into a loan agreement. That's the primary theory alleged in the case. It's not based on factual issues. It's about a legal conclusion. And there's 100 years of precedent that says that's not the law. Look, I read Judge Preston's decision as saying that your adversaries had plausibly pled that these were sham agreements. They were packaged as sales or transfers, but they were in fact loans. So, you know, that's a difficult question. I mean, how can we be expected to make an intelligent ruling in that context without a developed record? The district court did make that finding, but it made it that finding based on a jump. An anti-assignment provision in the NFL settlement agreement and the Federal Assignment of Claims Act turns these into loans, these transactions into loans. That's all that can be left. The district court didn't make any of the factual findings that you're talking about because those aren't in the complaint. It was purely a legal conclusion, and that legal conclusion is wrong. The Third Circuit already came to a different conclusion, and that is the finding there. The record such as we have has some instances, whether they're typical or atypical, it's just not possible to say at this time. But the amount of money your client was extracting from these people, they may be valid business transactions. We don't know, but they certainly raise my eyebrows prima facie. What is going on here? What's going on is that these are sales agreements, and usury laws don't apply to sales agreements. So you say, the Ipsy Dick kid doesn't convince me. You may be right at the end of the day, but I need to know more before I can accept what you're offering us, or at least offering me. The legal analysis that goes into the conclusion that you're talking about is something that is fully briefed and is before this court, and that the district court ruled on completely and got it wrong. So an NFL player is entitled to a $50,000 settlement from the fund. You advance $30,000, and when the fund pays out, you take back the $30,000 plus the $20,000. You may be entitled to that, but I would just like to see that spelled out and documented, so I'm clear that that's really a sales and not a usurious loan. You know, the facts are troublesome for you, but as I said, we have a complete open mind. All I want to see is a record. Your Honor, I appreciate that, but that fact isn't in the complaint, and there's a reason it's not in the complaint, because it's not true. And all you have to do is look at the Third Circuit's decision here and these contracts. And what the Third Circuit explained was that the settlement agreement, the NFL settlement agreement, wasn't even finalized until January 2017. And that was after all these contracts were entered into. This complaint's filed in February 2017, and NFL players couldn't even submit a claim until March of 2017 when we were already into this motion to dismiss. There's nothing in the complaint that says the type of transaction that you're referring to with the NFL happened at all. It's not in the record, and that's because the district court reached its conclusion not based on factual allegations. The district court reached its conclusion based on a legal analysis of the Federal Anti-Assignment Act and the meaning of the anti-assignment provision in the NFL concussion settlement deal. And the district court's conclusion is wrong. We have 100 years of cases interpreting the Anti-Assignment Act that says that an assignment remains enforceable between the assignor and the assignee. Well, the government can waive it. The government cannot waive it. But between the assigner and assignee, when you have a purchase agreement, that remains enforceable. It doesn't convert it into a loan. That's beautiful. Mr. Roth, we have your argument. I'm sorry. I was going to end it. No, no. I was about to say, you know, you ultimately may win. I don't know.  All right. Mr. Roth, we have your argument. Thank you. We'll hear Mr. Diehl on his rebuttal. Yes, Your Honor. I want to pick up on three points related to the Bureau's appeal. First, in terms of the district court's initial consideration of the ratification that was done under Acting Director Mulvaney, I think when you read the district court's decision, it's clear that the district court is basing it on basically two factors, which are no longer present. As I think one member of the panel mentioned before, the circumstances have changed. And so at that time, Judge Preska thought that the provision was not severable. Obviously, the Supreme Court has made clear that that's not the case. And Judge Preska was also concerned at that time that the Acting Director was only temporarily leading the Bureau and that at a future point, the Bureau would be led by a director who was removable only for cause. And that also led to the district court's conclusion there with respect to ratification. On the notice of appeal issue, I think one important thing to keep in mind here is that the Bureau's notice of appeal was filed while it was being led by Acting Director Mulvaney. Acting Director Mulvaney was removable by the President at will. So you don't even really even need to think about ratification with respect to the effect of the Bureau's notice of appeal because there was no constitutional issue with that notice, even under RD's theory. With respect to the issue of the Bureau's authority to act at the time when it did, if you do take that as a requirement on RD's approach, I would point the court to the Ninth Circuit's decision in CFPB v. Gordon, which deals with this issue extensively and explains that in situations similar to this, the Bureau had authority to bring an action even when there was a constitutional issue, an Article II issue with the Bureau's leadership. And I see that my time is up. I'm happy to answer any other questions that the court might have. Thank you. Ms. Olson? Thank you, Your Honor. Three points. The first is, counsel says that these were assignments, but they literally could not make assignments based on the anti-assignment provision in the NFL settlement and the Anti-Assignment Act. And they knew that when they entered these agreements, that that was prohibited for them to step into the shoes of these consumers and make any demands against these funds or make any subsequent assignments. Counsel references the Third Circuit's case in the NFL agreement, but I think that's actually very harmful for their case. Because what the court said there was the anti-assignment provision in NFL invalidated any true assignment in these agreements. And what's left, you have to look at, on a case-by-case basis, you look at the facts. And it could be that what is left is loans or some other agreement, but any actual assignment, that is precluded by the effect of the anti-assignment provision. And when you look at what we have here, it is the structure of a loan. It is, I give you cash, you give me more cash later. And doing it when there is almost minimal risk for ARTI that it will not be paid because the consumers have their award letters in hand. Second, ARTI tries to make this seem really complicated, that there are these factors and it's about assignments. But the case law is clear, legal fictions don't matter. The fact that they label these assignments do not matter. The case law is clear that you must look at the substance of the loans. And what we have here is an agreement for cash with extraordinary high rates of interest that were potentially usurious and should be allowed to go to discovery. And three is just a reminder that the state's claims are here regardless. And for the purposes of your motion to dismiss, we should get discovery because the complaint has raised at least plausible claims that, given the minimal degree of risk and the basic structure of these agreements, there was something going on that these were plausibly sham transactions, and there should be discovery on that point. Thank you. Thank you all. We'll reserve decision.